FILED
JUL 24 2006
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES OF AMERICA, )
)
          Plaintiff, )
)
v. )
) No. CR-05-00487-DLJ
JASON ALBERT, )
) **ORDER**
          Defendant. )
_____ )

On May 12, 2006, the Court conducted an evidentiary hearing on Defendant's Motion to Suppress Evidence. Kimberly M. Briggs appeared on behalf of the government; Jerome E. Matthews appeared for the Defendant.

On May 24, 2006, the Defendant submitted a Summary of the Evidence and Statement of Law Relating to the Evidentiary Hearing. On June 20, 2006, the government submitted a Reply to Defendant's Motion to Suppress arguing that the Supreme Court's June 19, 2006 decision in <u>Samson v. California</u>, 126 S.Ct. 2193, resolved the Defendant's Motion. On June 27, 2006, the Defendant filed a Reply Relating to the Evidentiary Hearing, stating that an issue on the Motion to Suppress still remained.

Having considered the testimony at the hearing, arguments of counsel, the papers submitted, and the applicable law, the Court hereby DENIES Defendant's Motion to Suppress.

**I. BACKGROUND**

The following summary of facts is based upon Officer James Benjamin Javier's testimony at the May 12, 2006 evidentiary hearing

and the police report detailing the events of the January 5, 2005 parole search of Lynda Van Camp's residence, attached as Exhibit A to the Defendant's Motion to Suppress.

Defendant Jason Albert was a California parolee-at-large with a warrant out for his arrest. The Hayward police received an anonymous tip that the Defendant was dating Lynda Van Camp. Van Camp was herself on parole for forgery. Her conditions of parole are attached as Exhibit B to the government's Opposition.

The conditions of Van Camp's parole state that: "you and your residence and any property under your control may be searched without a warrant by an agent of the Department of Corrections or any law enforcement officer."

On the evening of January 5, 2005 the Hayward police went to 29363 Dixon Street #1. The police report indicates that the reason for the visit to Dixon Street was "to do a parole search on Lynda Van Camp." In the two years which Lynda Van Camp had been on parole she had never previously been the subject of a parole search.

The police report goes on to state that: "SDU also received information from an anonymous informant that Lynda is dating Jason Albert, who is an armed and dangerous parolee at large whose [sic] is on parole for assault with a deadly weapon."

Three police officers went to the apartment, along with a police dog. Two of the officers went to the door, while the third

officer and the dog watched the rear of the residence.

The officers knocked on the door. The knock was answered by Van Camp's father, David Van Camp, who was there with his wife and two grandchildren. David Can Camp admitted the police into the home. Lynda Van Camp came into the family room from the bedroom.

Lynda Van Camp asked why the police had come and they responded that they were there to conduct a parole search. Van Camp expressed surprise - she was nervous and kept looking back at her room. The police officers asked her whether any one else was in the room. Based on her behavior, which included crying during continued questioning about whether there was anyone in her room, the police suspected that the Defendant was hiding in her room.

The police had Lynda Van Camp's family members leave the apartment and then informed the residents that they were going to perform a K-9 search. After several more announcements regarding the proposed K-9 search, the Defendant came out of the bedroom. At that point the police placed the Defendant under arrest and performed a search of Lynda Van Camp's bedroom.

In Van Camp's bedroom they found a gym bag underneath a folded blanket. The credit card case inside the bag indicated that the bag belonged to the Defendant. The bag contained clothing belonging to a male as well as a .380 Browning semi-automatic handgun and a box of bullets. The police also recovered a methamphetimine pipe, some vicodin pills, some syringes and some

spoons with suspected tar heroin residue on them.

Based on the fact that there were adult male clothes in the closet and in the dresser drawers, the police suspected that the Defendant had been living in the apartment for some time.

In addition to arresting the Defendant, the police arrested Lynda Van Camp for harboring a wanted felon.

## II.   LEGAL STANDARDS

1.   <u>Standing</u>

In order for a defendant to challenge a search, the defendant must demonstrate that a search and seizure violated his personal Fourth Amendment rights based on a legitimate expectation of privacy. <u>Rawlings v. Kentucky</u>, 448 U.S. 98, 106 (1980).

2.   <u>Parole Searches</u>

The Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee which has been authorized by state law. <u>Samson v. California</u>, 126 S.Ct. 2193 (June 19, 2006). Under the Fourth Amendment's "totality of the circumstances" approach, a parolee's privacy interest is outweighed by the state's substantial interest in integrating parolees back into the community and combating recidivism. <u>Id</u>.

California Penal Code § 3067(a) provides that every prisoner eligible for release on state parole "shall agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search

warrant and with or without cause."

California Penal Code § 3067(d) states that "[i]t is not the intent of the Legislature to authorize law enforcement officers to conduct searches for the sole purpose of harassment." Related caselaw prohibits parole searches that are "arbitrary, capricious or harassing." See People v. Reyes, 19 Cal. 4th 743, 752-54, 968 P. 2d 445, 450-51 (1998); People v. Bravo, 43 Cal. 3d 600, 610, 738 P. 2d 336, 342 (1987).

### III.   DISCUSSION

1.   Defendant's Standing to Contest the Search

The government argues in its Opposition papers that the Defendant has "filed no declaration nor made any appropriate showing that he had any legally cognizable expectation of privacy" in the Van Camp's apartment, and thus lacks standing to contest the search. For support, the government cites United States v. Armenta, 69 F.3d 304, 308-09 (9th Cir. 1995). In Armenta, the defendant had only stayed in the house the night before and the court found that there was no identifiable host to grant Armenta permission to stay.

The situation in this case, in contrast to Armenta, falls squarely under Minnesota v. Olson, 495 U.S. 91 (1990). In Olson, the Supreme Court held that "Olson's status as an overnight guest is alone enough to show that he had a reasonable expectation of privacy." Id. at 96. The police report in this case indicates

that the Defendant had been residing in Van Camp's apartment, and Officer James Benjamin Javier's testimony at the May 12, 2006 evidentiary hearing confirms that the Defendant was residing in the apartment. Therefore, the Defendant, as more than even an overnight guest, has standing to contest the search as violative of his Fourth Amendment rights.

2. <u>Legality of the Parole Search</u>

In light of the Supreme Court's recent decision in <u>Samson v. California</u>, 126 S.Ct. 2193 (June 19, 2006), the Defendant acknowledges that the police were entitled to conduct the parole search of Lynda Van Camp's residence without any level of suspicion of criminal activity or wrongdoing. <u>See</u> Defendant's Reply Relating to Evidentiary Hearing, filed June 27, 2006. The Supreme Court in <u>Samson</u> upheld California's parole search law, California Penal Code § 3067(a), the same law that provided the authority for the parole search of Lynda Van Camp's residence in this case.

The Defendant argues that the question remains whether the exception under California Penal Code § 3067(d) and related caselaw for "arbitrary, capricious or harassing" searches applies in this case. California Penal Code § 3067(d) states that "[i]t is not the intent of the Legislature to authorize law enforcement officers to conduct searches for the sole purpose of harassment." Related caselaw prohibits searches that are "arbitrary, capricious or harassing." <u>See</u> <u>People v. Reyes</u>, 19 Cal. 4th 743, 752-54, 968 P.

2d 445, 450-51 (1998); People v. Bravo, 43 Cal. 3d 600, 610, 738 P. 2d 336, 342 (1987).

Under California caselaw, a search is arbitrary or capricious when the motivation for the search is unrelated to rehabilitative, reformative or legitimate law enforcement purposes, or when the search is motivated by personal animosity toward the parolee. See In re Anthony S., 4 Cal. App. 4th 1000, 1004 (1992). For example, "a parole search could become constitutionally 'unreasonable' if made too often, or at an unreasonable hour, or if unreasonably prolonged or for other reasons establishing arbitrary or oppressive conduct by the searching officer." People v. Clower, 16 Cal. App. 4th 1737, 1741 (1993).

In the context of jointly occupied premises, such as in the Defendant and Lynda Van Camp's case, the California Supreme Court has held that an officer's subjective intent does not invalidate the search of premises jointly occupied by a defendant and someone who is subject to a search condition, if the search is objectively justifiable to monitor the person with the search condition or to serve some other law enforcement purpose. People v. Woods, 981 P.2d 1019 (1999).

In Woods, a police officer had been told that drugs were being sold out of a house, in which the officer knew that a woman resided who had consented to warrantless searches of her residence as a condition of her probation. The officer observed a man walking

7

away from the house in a suspicious manner and found that the person was carrying a weapon and illegal drugs. Using the probation search condition, the police officer searched the woman's residence for evidence against the man and found evidence that incriminated the defendants in Woods, who also lived at the residence. Applying an objective standard to the facts in Woods, the California Supreme Court found no basis for invalidating the officer's search. Id. at 1028.

Given the facts in this case, the Court finds no basis for finding that the parole search of Lynda Van Camp's residence was "arbitrary, capricious or harassing." As stated in the police report and confirmed at the evidentiary hearing, the Defendant was known to the police to be an armed and dangerous parolee at large who was on parole for assault with a deadly weapon. The Hayward police received a tip that the Defendant was dating Lynda Van Camp. Van Camp was herself on parole for forgery. There is no evidence that the police engaged in harassing behavior in conducting the search. The information known to the police establishes that the parole search of Lynda Van Camp was for a legitimate law enforcement purpose and was not arbitrary, capricious, or harassing. In point of fact, even in the absence of the Samson decision, the facts appear to support a conclusion that the police had a reasonable suspicion that parolee Lynda Van Camp was committing a new crime by harboring a fugitive. The Court finds

that there was a lawful parole search of Lynda Van Camp's residence.

The Court notes that the government also maintains that the search of Lynda Van Camp's apartment was lawful because Van Camp's father consented to the police entering the apartment. The search is upheld under the parole search doctrine and the Court need not address the issue of whether there was consent to search.

### IV.  CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion to Suppress Evidence.

IT IS SO ORDERED

Dated:     July 24, 2006

_____
D. Lowell Jensen
United States District Judge